IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL

| | | |
|---|---|---|
| CLARKE COUNTY DEVELOPMENT CORPORATION, | ) ) ) | CASE NUMBER:_____ |
| Plaintiff, | ) ) ) | |
| v. | ) ) | **NOTICE PURSUANT TO LR 81** |
| AFFINITY GAMING, LLC, and HGI-LAKESIDE, LLC, | ) ) ) | |
| Defendants. | ) ) | |

**COMES NOW** the Defendants by and through their counsel and for their Notice Pursuant to LR 81 state the following:

1. <u>Copies of all pleadings in the state case</u>:  Copies of all pleadings, process and orders have been attached hereto.

2. <u>Matters pending in the state court case</u>:  Plaintiff's Petition at Law seeks damages for an alleged breach of contract and seeks to compel specific performance in equity.

3. <u>Information on Counsel</u>:  Plaintiff is represented by the following attorneys:

    a.  Douglas Gross:  Brown, Winick, Graves, Gross, Baskerville and Schoenbaum, P.L.C., 666 Grand Avenue, Suite 2000, Des Moines, IA 50309.  (office 515-242-2400 / fax 515-283-0231).  gross@brownwinick.com.

    b.  Rachel Rowley:  rowley@brownwinick.com.

    c.  Jonathan Gallagher:  gallagher@brownwinick.com.

Respectfully Submitted by:

_Nick Mauro_ (signature)
_____

Jerry Crawford          AT0001697
Nick Mauro              AT0005007
CRAWFORD & MAURO LAW FIRM
1701 Ruan Center, 666 Grand Avenue
Des Moines, IA  50309
(515) 245-5420
(515) 245-5421 (FAX)
crawford@crawfordlawfirm.com
mauro@crawfordlawfirm.com


 /s/ Jim Quilty_____
Jim Quilty          AT0006455
QUILTY LAW FIRM
699 Walnut Street, 4th Floor
Des Moines, Iowa 50309
515-661-6338
515-724-5801 (FAX)
quiltyclf@aol.com
ATTORNEYS FOR DEFENDANTS

Original filed.


## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on August 14, 2013, I electronically filed the foregoing with the Clerk of Court using the ECF system and that a true copy of this document will be served electronically through the Court's ECF filing system upon the following on January 18, 2013:

Douglas Gross
Rachel Rowley
Jonathon Gallagher
Brown, Winick, Graves, Gross, Baskerville and Schoenbaum, P.L.C.,
666 Grand Avenue, Suite 2000, Des Moines, IA 50309.
gross@brownwinick.com
rowley@brownwinick.com

gallagher@brownwinick.com.

COUNSEL FOR PLAINTIFF

**QUILTY LAW FIRM**

By:   /s/ Jim Quilty_____

        Jim Quilty        AT0006455
        QUILTY LAW FIRM
        699 Walnut Street, 4th Floor
        Des Moines, Iowa 50309
        515-661-6338
        515-724-5801 (FAX)
        quiltyclf@aol.com
        ATTORNEYS FOR DEFENDANTS

FILED

2013 AUG -5   PM 12: 36

IN THE IOWA DISTRICT COURT FOR CLARKE COUNTY

CLARKE COUNTY DEVELOPMENT
CORPORATION,

      Plaintiff,

v.

AFFINITY GAMING, LLC AND HGI-
LAKESIDE, LLC

      Defendants.

CASE NO. #LACV011900

**PETITION AND JURY DEMAND**

COMES NOW the Plaintiff, Clarke County Development Corporation ("CCDC"), and

for its Petition and Jury Demand, states as follows:

## NATURE OF THE LAWSUIT

1.    CCDC brings this action seeking specific performance of the parties'

Memorandum of Understanding ("MOU") that was entered into by the parties after the

conclusion of a mediation. As discussed below, CCDC and the Defendants participated in a

mediation on June 3, 2013. The purpose of the mediation was to resolve two pending lawsuits.

The first lawsuit was a state court action that was filed by CCDC against Defendants and the

Iowa Racing and Gaming Commission (the "Commission") and concerns actions taken by the

Commission when it considered Affinity's application for a gaming license. The second action

was a federal court action that was filed by CCDC which sought a declaration from the court

regarding the assignability of a management agreement between CCDC and the Defendants. At

the conclusion of the mediation, the parties had a meeting of the minds regarding all material

terms of a settlement and Defendants' counsel drafted a written, unambiguous MOU that all

parties executed.  The Defendants now refuse to perform their obligations under the MOU.

## PARTIES

2.     Plaintiff, Clarke County Development Corporation ("CCDC"), at all times material hereto, is a non-profit corporation that is licensed to conduct gambling games under Iowa Code Chapter 99F.  CCDC is the nonprofit sponsoring organization for the Lakeside Casino, in Osceola, Iowa.  CCDC has its principal place of business in Osceola, Clarke County, Iowa.

3.     Upon information and belief, Defendant, Affinity Gaming, LLC ("Affinity"), is a Nevada limited liability company with a principal place of business located at 3440 West Russell Road, Las Vegas, Nevada 89118.  Affinity owns Lakeside Casino located in Osceola, Iowa.

4.     Upon information and belief, Defendant, HGI-Lakeside, LLC ("HGI-Lakeside"), is a Nevada limited liability company with a principal place of business located at 3440 West Russell Road, Las Vegas, Nevada 89118.  HGI-Lakeside is a wholly owned subsidiary of Affinity.  HGI-Lakeside is licensed to operate gambling games under Iowa Code Chapter 99F and is the for-profit operator of the Lakeside Casino located in Osceola, Iowa.  Upon information and belief, Affinity is legally responsible and liable for all actions taken by HGI-Lakeside. Affinity and HGI-Lakeside shall be collectively referred to herein as "Affinity."

## JURISDICTION AND VENUE

5.     This Court has jurisdiction over the parties to and subject matter of this action because the agreement described below was to be performed in whole or in part in Clarke County, Iowa.  In addition, Affinity has an office located in Clarke County, Iowa and this matter arises out of or in connection with the business of such office.

6.     Venue is appropriate in this Court pursuant to Iowa Code § 616.7 and § 616.14.

## FACTUAL BACKGROUND

7.     Iowa Code Chapter 99F provides that a license may be obtained by a non-profit corporation from the Commission for the conducting of gambling operations.  Chapter 99F also provides that a non-profit sponsoring organization may enter into a management agreement with a for-profit organization for the operation of an excursion gambling boat.

8.     In 1997, CCDC executed a management agreement with the former operator of the Lakeside Casino, Southern Iowa Gaming Co ("Southern Iowa").  *See* Management Agreement attached hereto as Exhibit 1.  In 2004, Southern Iowa sold its operating assets to Herbst Gaming, Inc. ("Herbst").  In connection with the sale of Southern Iowa's assets and as required by the Management Agreement, in September 2004, CCDC executed an agreement which provided its consent to the assignment of the Management Agreement to Herbst (the "Consent to Assignment").

9.     In March 2009, Herbst filed for bankruptcy in the United States Bankruptcy Court for the District of Nevada.  The Bankruptcy Code provides extraordinary powers for an entity to assume and assign a contract and, as a result, Herbst was allowed to assume both the Management Agreement and the Consent to Assignment and transfer both contracts to the new entities emerging from bankruptcy, HGI-Gaming, LLC and Affinity Gaming, LLC. Consequently, after the bankruptcy proceedings, CCDC became a party to the Management Agreement with Affinity.

10.    After Affinity emerged from bankruptcy, Affinity had to obtain a gaming license and needed the Commission's approval and CCDC's cooperation to operate the Lakeside Casino.

CCDC engaged in discussions with Affinity regarding the parties' relationship. Under Chapter 99F of the Iowa Code, a non-profit sponsoring organization of a casino is entitled to a 3.0% distribution of the casino's adjusted gross revenue. However, the parties' Management Agreement only provided for a 1.5% distribution to CCDC. CCDC discussed with the Commission and Affinity the fact that the Management Agreement did not provide for the statutory minimum. However, the Commission decided to allow the debtor Herbst to "transfer" its gaming license to Affinity and did not require the Management Agreement to be amended. Because CCDC believed that the Commission erred under both Iowa law and its own rules by "transferring" the gaming license held by the debtor, Herbst, to Affinity and because it believed that it is entitled to a distribution consistent with the statutory minimum, CCDC filed a lawsuit in state court regarding the "transfer" of Herbst's gaming license to Affinity (the "State Court Action").

11.     In addition, Affinity represented to CCDC that it believed that it could assign the parties' Management Agreement without CCDC's consent. CCDC believed that under Iowa law, the Management Agreement could not be transferred without consent by the non-profit sponsoring organization. The parties could not resolve their differences regarding the assignability of the Management Agreement and subsequently another lawsuit was filed regarding that issue. Affinity subsequently removed the case to federal court (the "Federal Court Action").

12.     On June 3, 2013, the parties participated in mediation regarding both the State Court Action and the Federal Court Action. At the conclusion of the mediation, the parties had a meeting of the minds regarding all material terms of a settlement. Indeed, Affinity's counsel drafted a written Memorandum of Understanding (the "MOU") that all parties executed. *See* Memorandum of Understanding attached hereto as Exhibit 2.

13.     The MOU indicated, among other things, that: (1)  on or before July 1, 2013, Affinity shall pay CCDC $600,000; (2) on or before July 1, 2013, Affinity shall pay to CCDC $2.5 million to be used by the Clarke County Reservoir Commission; and (3) CCDC will not unreasonably withhold its consent for Affinity to assign the Management Agreement to another entity  within the next five (5) years provided that a condition upon any sale of Lakeside Casino would be that the new owner agree to pay CCDC "3.0% of its adjusted gross revenue."

14.     Consistent with the MOU, Affinity's counsel drafted a draft settlement agreement that states as follows:

> **4.     Conditions of Assignment**.  The assignments described in Section 3 of this Settlement Agreement shall be conditioned upon the assignee's written agreement to the following:
>
> . . .
>
> b.     The Management Agreement shall be amended to provide that upon assignment the "Admission Fee" set forth in Paragraph 5.B of the Management Agreement shall be equal to 3.0% of Adjusted Gross Gaming Revenue, or the state minimum percentage, whichever is greater at the time of assignment.

15.     Despite the unambiguous language of the MOU and the draft settlement agreement (both of which were drafted by Affinity), Affinity has refused to perform its obligations under the MOU. Upon information and belief, Affinity wanted CCDC to agree to a resolution at mediation and after CCDC become accustomed to the idea of receiving the monetary payments under the MOU, Affinity planned to back out of its agreement regarding the 3.0% distribution paid by the new owner upon a sale.

## COUNT I

### BREACH OF WRITTEN CONTRACT

16.    CCDC realleges and incorporates by reference all of the foregoing paragraphs of this Petition as if set forth fully herein.

17.    The MOU entered into by and between CCDC and Affinity formed a valid, binding and enforceable contract between them.

18.    Affinity materially breached the parties' agreements in numerous ways, including, but not limited to, by failing to make the payments required under the MOU, specifically, $600,000 to CCDC and $2.5 million for use by the Clarke County Reservoir Commission.

19.    CCDC has suffered damages as a result of Affinity's breach of the MOU.

20.    Affinity's actions were so outrageous and done in bad faith as to justify an award of punitive damages.

21.    Affinity's actions exceeded wanton disregard for CCDC's rights and rise to the level of oppression or connivance to injure CCDC, which also entitles CCDC to an award of attorney fees.

WHEREFORE Plaintiff CCDC respectfully requests that this Court enter judgment in favor of CCDC and against Defendants Affinity and HGI-Lakeside in an amount that will be proven at trial, award pre- and post-judgment interest, punitive damages, and attorneys' fees, and for such additional relief as the Court deems just and fair under the circumstances.

## COUNT II

### SPECIFIC PERFORMANCE

22.    CCDC realleges and incorporates by reference all of the foregoing paragraphs of

this Petition as if set forth fully herein.

23.     The MOU entered into by and between CCDC and Affinity formed a valid, binding and enforceable contract between them.

24.     Affinity materially breached the parties' agreements in numerous ways, including, but not limited to, by failing to pay CCDC the payments required under the MOU, specifically, $600,000 to CCDC and $2.5 million for use by the Clarke County Reservoir Commission and by indicating that it will not require a new owner of the Lakeside Casino to agree to pay CCDC 3.0% of its Adjusted Gross Revenue or the state minimum, whichever is greater.

25.     CCDC has suffered damages as a result of Affinity's breach of the MOU and will continue to incur damages due to Affinity's breach of the MOU.

26.     It would be unjust and inequitable not to require Affinity and HGI-Lakeside to fully perform their obligations under the MOU.

27.     Affinity's actions were so outrageous and done in bad faith as to justify an award of punitive damages.

28.     Affinity's actions exceeded wanton disregard for CCDC's rights and rise to the level of oppression or connivance to injure CCDC, which also entitles CCDC to an award of attorney fees.

29.     Therefore, CCDC seeks an order from this Court compelling Affinity and HGI-Lakeside to comply with their contractual obligations by making the payments required under the MOU and requiring that as a condition upon any sale of the Lakeside Casino, Affinity require the new owner to agree to pay CCDC 3.0% of its adjusted gross revenue or the state minimum under Chapter 99F.5, whichever is greater.

WHEREFORE Plaintiff CCDC requests that the Court order Affinity and HGI-Lakeside to specifically perform the MOU, costs of this action, punitive damages, and attorneys' fees, and for such additional relief as the Court deems just and fair under the circumstances.

## JURY DEMAND

Plaintiff CCDC demands a trial by jury of all issues so triable in this case.

Dated August 1, 2013.

Respectfully Submitted,

_____
Douglas E. Gross, AT0003056
Rachel Rowley, AT0009517
Jonathan Gallagher, AT0009845

BROWN, WINICK, GRAVES, GROSS,
BASKERVILLE AND SCHOENEBAUM,
P.L.C.
666 Grand Avenue, Suite 2000
Des Moines, IA 50309-2510
Telephone:  515-242-2400
Facsimile:  515-283-0231
E-mail: gross@brownwinick.com
E-mail: rowley@brownwinick.com
E-mail: gallagher@brownwinick.com

ATTORNEYS FOR CLARKE COUNTY
DEVELOPMENT CORPORATION

Original delivered to:

Clarke County Clerk of Court
Clarke County Courthouse
100 South Main Street
Osceola, IA  50213

9

Copy to:

Jerry Crawford
Nick Mauro
CRAWFORD & MAURO LAW FIRM
1701 Ruan Center, 666 Grand Avenue
Des Moines, Iowa 50309

Jim Quilty
QUILTY LAW FIRM
699 Walnut Street, 4th Floor
Des Moines, Iowa 50309

ATTORNEYS FOR AFFINITY GAMING,
LLC AND HGI-LAKESIDE, LLC

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true copy of the foregoing in-
strument was served upon each of the attorneys of record of all parties to
the above-entitled cause by enclosing the same in an envelope addressed
to each such attorney at such attorney's address as disclosed by the
pleadings of record herein on the 02 day of August, 2013.

By:   ☒ U.S. Mail            ☐ Facsimile

      ☐ Hand Delivered       ☐ Overnight Courier

      ☐ Federal Express      ☐ Other – E-mail

Signature _Gabrielle Davis_

FROM :CLARKE CO DEVELOPMENT CO⌐        FAX NO. :16413426353          Jul. 22 2004 04:49PM P2

# MANAGEMENT AND OPERATION AGREEMENT

This Agreement is entered into this 15TH day of July, 1997, by and between SOUTHERN IOWA GAMING CO., a Iowa corporation (hereinafter called "Southern Iowa") and CLARKE COUNTY DEVELOPMENT CORPORATION, an Iowa non-profit corporation (hereinafter called "Development").

## I. PREMISES

1.      Iowa Code Chapter 99F (the "Act") authorizes the operation of gambling games on excursion boats operating in the State of Iowa. The Act provides that a license for operating gambling games may be granted to a non-profit entity that is a "qualified sponsoring organization". The Act also provides that a license to operate the excursion boat, on which the gambling games will be conducted, may be granted to any partnership or corporation. Furthermore, the Act authorizes a qualified sponsoring organization, that is licensed to operate gambling games, to enter into a management and operation agreement with a person who is an excursion boat licensee, for the operation of the gambling games.

2.      DEVELOPMENT is a qualified sponsoring organization. SOUTHERN IOWA is a corporation that intends to obtain a license under the Act for the operation of the excursion boat on which the gambling games will be operated (hereinafter the "Riverboat"). DEVELOPMENT and SOUTHERN IOWA desire to cooperate in a joint license application to pursue these activities.

3.      DEVELOPMENT and SOUTHERN IOWA desire to establish this Operation and Management Agreement, whereby DEVELOPMENT will authorize SOUTHERN IOWA as its sole and exclusive operator and manager of the gambling games that DEVELOPMENT is licensed to operate during the term of this Agreement (hereinafter "Gambling Games") (unless terminated as hereinafter provided or upon the non-approval of SOUTHERN IOWA by the Iowa Racing and Gaming Commission). The operation of such Gambling Games will be conducted exclusively on the Riverboat to be operated by SOUTHERN IOWA.



EXHIBIT
1

## II. AGREEMENT

NOW THEREFORE, in consideration of the mutual agreements herein contained DEVELOPMENT and SOUTHERN IOWA agree:

1. <u>Appointment of Operator and Manager.</u>

A.      Subject to the terms and conditions of this Agreement, DEVELOPMENT hereby selects and appoints SOUTHERN IOWA as its exclusive operator for the purpose of conducting Gambling Games on the Riverboat to be operated by SOUTHERN IOWA during the term of this Agreement unless terminated as hereinafter provided or non-approval of SOUTHERN IOWA by the Iowa Racing and Gaming Commission. DEVELOPMENT also agrees to act as the "Qualified Sponsoring Organization," as that term is used in Iowa Code Chapter 99F, in connection with the license application(s) of DEVELOPMENT and SOUTHERN IOWA to the Iowa Racing and Gaming Commission. The appointment of SOUTHERN IOWA as exclusive operating and management agent is subject to the condition subsequent that at no time during the term of this Agreement shall SOUTHERN IOWA cause such license (or any renewal or replacement license) to be suspended, revoked or terminated for a period in excess of one hundred twenty (120) days.

B.      Subject to the terms and conditions of this Agreement, SOUTHERN IOWA hereby accepts the responsibility of operating and managing Gambling Games for DEVELOPMENT, to the extent that such Gambling Games are hereafter authorized by the Iowa Racing and Gaming Commission and in accordance with the provisions of Iowa Code Chapter 99F.

C.      The term of this Agreement shall be five (5) years. SOUTHERN IOWA shall also have nine (9) exclusive Options to Extend this Agreement for additional five (5) year terms from the expiration of the then current term.

2.   <u>License Applications.</u>

A.      DEVELOPMENT and SOUTHERN IOWA agree to cooperate fully and quickly in the preparation and filing of all documentation required by the Iowa Racing and Gaming Commission. DEVELOPMENT and SOUTHERN IOWA will seek approval for a license to conduct the Gambling Games and the Riverboat under Iowa Code Chapter 99F, in conformance with the rules and regulations of the Iowa Racing and Gaming Commission.

B.      Both DEVELOPMENT and SOUTHERN IOWA acknowledge that an important part of the license application procedure is the completion of background investigations by the Iowa Division of Criminal Investigations. Such investigations will require disclosure by all officers, directors, agents and principal equity

holders (hereinafter collectively referred to as "Insiders") of both DEVELOPMENT and SOUTHERN IOWA. Both DEVELOPMENT and SOUTHERN IOWA agree to compile such information from their respective Insiders immediately. In the event that such information reveals that an Insider exists who would not meet the requirements of the Division of Criminal Investigation, or the Iowa Racing and Gaming Commission, or the requirements of Chapter 99F, such individual shall be terminated (if he or she is a employee), or removed (if he or she is a director), or their interest in SOUTHERN IOWA eliminated (if he or she is a partner or stockholder in SOUTHERN IOWA). The preceding sentence shall apply throughout the term of this Agreement.

C.      DEVELOPMENT agrees throughout the term of the Agreement to undertake all actions necessary to: (i) continue its corporate status, in good standing, as an Iowa non-profit corporation; (ii) obtain and continue its status as an exempt non-profit entity under Section 501 of the Internal Revenue Code; and (iii) continue its status as a qualified sponsoring organization under Iowa Code Chapter 99F.

3.      Costs of License Applications: Money Advance for DEVELOPMENT.

The full costs of all license applications, including application fees and other fees charged by the Iowa Racing and Gaming Commission shall be paid by SOUTHERN IOWA.

4.      Services to Be Performed by Agent.

A.      DEVELOPMENT hereby appoints SOUTHERN IOWA as its sole and exclusive agent, and SOUTHERN IOWA agrees as such agent, to perform the following services for DEVELOPMENT:

(i)      To assist DEVELOPMENT in retaining its license to operate the Gambling Games and to assist DEVELOPMENT in meeting all requirements for the satisfaction of all legal and fiscal requirements for the maintenance and continuation of such license.

(ii)      To provide all personnel, equipment and services necessary for the operation of the Gambling Games, including but not limited to: croupiers, cashiers and other Gambling Games employees, training, janitorial, garbage removal, security, insurance, legal and accounting services, advertising, program printing and distribution, and other related operational services. SOUTHERN IOWA shall have exclusive control over the management affairs in the operation of the Gambling Games.

(iii)      To generally perform all management functions and to make all management decisions necessary or appropriate for the operation of the Gambling Games. SOUTHERN IOWA agrees to prepare any and all reports to the Iowa Racing and Gaming Commission as may be required by the rules and regulations of said Commission and the Act. All books and records of the Gambling Games shall be

3

available for inspection during normal business hours. SOUTHERN IOWA shall cooperate with DEVELOPMENT and its accountants in providing operational information that is required by the Iowa Racing and Gaming Commission.

(iv)   SOUTHERN IOWA shall indemnify and hold DEVELOPMENT, its directors and officers harmless from any and all liability arising from the performance by SOUTHERN IOWA of the above-described services.

B.   All costs, expenses, fees, salaries and compensation advanced or incurred by SOUTHERN IOWA under this Section 4 shall be paid by SOUTHERN IOWA at its sole cost.

5.   Proceeds from Boat Operations, Gambling Games and Admissions.

A.   Proceeds. All proceeds received by SOUTHERN IOWA from the operation of the Riverboat (gambling or non-gambling) shall be the sole and exclusive property of SOUTHERN IOWA, subject to the terms of this Agreement and Chapter 99F of the Iowa Code. Such proceeds include, but are not limited to, gambling income, passenger fares, food and beverage sales, entertainment, souvenir and gift sales, and beauty and other personal services.

B.   Admission Fee. On a monthly basis and not later than the 15th of each succeeding month, SOUTHERN IOWA shall pay DEVELOPMENT the sum of fifty cents ($.50) for each Patron admitted on the excursion gambling boat ("Admission Fee"). "Patron" shall not include employees, non-gaming visitors of SOUTHERN IOWA or vendors.

6.   Default: Arbitration: Verification.

A.   Default Defined. In the event that one Party to this Agreement believes that the other Party is in default hereunder, the non-defaulting Party shall send written notice of such alleged default to the allegedly defaulting Party. During the thirty (30) day period following receipt of such notification; the allegedly defaulting Party shall have the right to cure any alleged default.

B.   Rights of DEVELOPMENT. In the event SOUTHERN IOWA is in default, and such default is not cured within thirty (30) days after receipt of written notice of default, then DEVELOPMENT shall have the option to terminate this Agreement, by notifying SOUTHERN IOWA of such termination in writing.

C.   Rights of Operator. In the event that DEVELOPMENT is in default, and such default is not cured within thirty (30) days after receipt of written notice thereof, then SOUTHERN IOWA shall have the option to terminate this Agreement by notifying DEVELOPMENT of such termination in writing.

4

FROM :CLARKE CO  DEVELOPMENT C     FAX NO. :16413426353          Jul. 22 2004 04:52PM P5

D.    Verification.  Each of the Parties to this Agreement shall have the right to verify performance by the other Party. To facilitate such verification, each Party agrees to allow representatives of the other Party reasonable access to each Party's books and records of the Riverboat and on-shore related facilities and activities, including but not limited to Gambling Games, and the Gambling Games facilities. SOUTHERN IOWA shall furnish to DEVELOPMENT copies of all reports and documents filed by SOUTHERN IOWA with the Iowa Racing and Gaming Commission, and shall furnish to DEVELOPMENT annual audited statements.

7.    Insurance and Indemnification.

A.    Indemnification.  SOUTHERN IOWA shall indemnify and hold DEVELOPMENT, and its directors and officers, harmless against and from any liability and/or claims for loss or damage to property, or for the injury to or death of any person arising out of SOUTHERN IOWA's operation of the Gambling Games, the Riverboat, the docking facilities or on-shore facilities and activities.

B.    Insurance.  Beginning on the date that SOUTHERN IOWA receives possession of the completed Riverboat, SOUTHERN IOWA shall maintain a policy or policies of liability insurance covering the Riverboat and any docking facilities and on-shore facilities owned or leased by SOUTHERN IOWA, providing personal injury, death and property damage liability coverage not less than Five Million Dollars ($5,000,000). SOUTHERN IOWA shall also maintain workers compensation insurance as required by law. Such policies of insurance shall name DEVELOPMENT as an additional or co-insured Party.

8.    Support of DEVELOPMENT.  Further, DEVELOPMENT agrees to use its best efforts to assist SOUTHERN IOWA in obtaining necessary licensing and permits for liquor, food, signage, amusements and similar permitted activities.

9.    No Partnership.  The Parties hereunder are acting as independent contractors and this Agreement shall not be construed to create any partnership or joint venture. SOUTHERN IOWA is acting in the limited capacity set forth herein and no Party hereto shall have the authority to bind the other or create any liability on behalf of the other. No provision hereof shall be construed to confer any rights or benefits on any other persons than the Parties hereto.

10.    Approval of Iowa Racing and Gaming Commission - Compliance with Iowa Law.  This Operation and Management Agreement, and any future amendments to this Agreement, shall be binding obligation of both SOUTHERN IOWA and DEVELOPMENT until such time as this Agreement, or future amendments, if any, and license renewal applications of DEVELOPMENT, are rejected by the Iowa Racing and Gaming Commission. The Parties agree to cooperate in the submission of this Agreement and any future amendments to the Iowa Racing and Gaming Commission. Both DEVELOPMENT and SOUTHERN IOWA jointly accept responsibility for compliance

with the laws of Iowa and the rules of the Iowa Racing and Gaming Commission. If the application for licensure is rejected due to unsuitability of DEVELOPMENT or an officer or director of DEVELOPMENT, then this Agreement shall be null and void if the issue of suitability is not resolved to the satisfaction of the IRGC within thirty (30) days.

11.   Ownership of Gambling Games Equipment. All Gambling Games equipment and supplies shall be the property of SOUTHERN IOWA. Nothing in this Agreement shall be construed to grant DEVELOPMENT any interest in the personal or real property owned by SOUTHERN IOWA, including, without limitation, (i) the Riverboat and the fixtures and personal property attached to or located on the Riverboat; (ii) the docking facilities, landings and real property.

12.   Assignment to Limited Partnership. DEVELOPMENT acknowledges that SOUTHERN IOWA may elect to assign its rights and delegate its duties under this Agreement to an Iowa corporation which is controlled by SOUTHERN IOWA or to a Limited Partnership in which an SOUTHERN IOWA controlled corporation will be the general partner.

## III. MISCELLANEOUS

1.   Governing Law. This Agreement shall be construed and interpreted, and the rights of the Parties shall be determined, in accordance with the laws of the State of Iowa. The Parties agree and acknowledge that all terms and provisions hereof are subject to applicable law, including the statutes of the State of Iowa with respect to gaming and any rules and regulations promulgated by the Commission.

2.   Event of Force Majeure. Any Party whose performance under this Agreement is prevented by an Event of Force Majeure shall give prompt notice of the Event of Force Majeure to the other Party and shall thereafter use its best efforts to minimize the duration and consequences of, and to eliminate, any such Event of Force Majeure. No Party shall have any liability to the other Party for a breach of this Agreement resulting from an Event of Force Majeure.

3.   Headings. The table of contents and the headings of the several sections herein are inserted for convenience of reference only and are not intended to be a part of or to affect the meaning or interpretation of this Agreement.

4.   Entire Agreement, Amendments and Waivers. This Agreement, together with all exhibits hereto, constitutes the entire Agreement among the Parties pertaining to the subject matter hereof and supersedes all prior and contemporaneous Agreements, understandings, negotiations and discussions, whether oral or written, of the Parties. There are no other Agreements among the Parties in connection with the subject matter hereof except as specifically set forth herein or contemplated hereby. Any supplement, modification or waiver of this Agreement shall be in writing and agreed to by all Partners. No waiver of any of the provisions of this Agreement shall be deemed or shall constitute

FROM :CLARKE CO   DEVELOPMENT CF        FAX NO. :16413426353        Jul. 22 2004 04:54PM P7

a waiver of any other provision hereof (whether or not similar) nor shall such waiver constitute a continuing waiver unless otherwise expressly provided.

5.   Remedies.  The Parties hereto acknowledge that the rights granted hereunder are unique and that irreparable damage would result if this Agreement is not specifically enforced and that, therefore, the rights and obligations of the Parties under this Agreement may be enforced by a decree of specific enforcement issued by a court of competent jurisdiction and appropriated equitable relief may be applied for and granted in connection therewith.

6.   Estoppel Certificates.  Each Party agrees to promptly execute estoppel certificates to the other Party upon request. If:

A.   the requesting Party delivers an estoppel certificate request to the certifying Party in accordance with the notice provisions of this Agreement, and

B.   ten (10) business days have elapsed from the effectiveness of such estoppel certificate request and during such period the certifying Party has failed to execute and deliver to the requesting Party (or its attorneys or the third Party(ies) designated by such requesting Party) the estoppel certificate counterpart(s) provided by the requesting Party, setting forth with reasonable specificity any alleged exceptions to the statements required to be contained in such estoppel certificate, then the certifying Party shall be deemed for all purposes, whether or not this lease has been terminated or is otherwise in full force and effect, to have executed and delivered to the third Party and the requesting Party an estoppel notice, dated as of the effective date of the estoppel certificate request, in the form submitted by the requesting Party to the certifying Party.

7.   Counterparts.  This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

8.   Notices.

A.   All notices required or permitted to be given hereunder shall be given by registered mail, in person (in writing), by telecopy or by telex and addressed as follows:

To Southern Iowa Gaming Co:
SOUTHERN IOWA GAMING CO.
101 Jules Street
St. Joseph, Missouri  64501

To Clarke County Development Corporation:
CLARKE COUNTY DEVELOPMENT CORPORATION
139 North Main
Osceola, Iowa 50213

B.      Any Party may from time to time change its address for the purpose of notices to that Party by a similar notice specifying a new address, but no such change shall be deemed to have been given until it is actually received by the Party sought to be charged with its contents.

C.      All notices and other communications required or permitted under this Agreement which are addressed as provided in this Section if delivered personally or by air courier, shall be effective upon delivery; and, if delivered by mail, shall be effective upon deposit in the United States mail, postage prepaid.

9.   No Third-Party Beneficiary.  This Agreement is being entered into solely for the benefit of the Parties hereto, and the Parties do not intend that any other person shall be a third-party beneficiary of the representations, warranties, agreements or covenants made by any Party contained in this Agreement.

10.   Severability.  In the event that any one or more of the provisions contained in this Agreement or in any other instrument referred to herein shall, for any reason, be held invalid or unenforceable in any respect, such invalidity or unenforceability shall not affect any other provision of this Agreement or any other such instrument.

11.   Successors and Assigns.  Subject to the restrictions on transfer and assignment herein contained, the terms and provisions of this Agreement shall be binding upon, and inure to the benefit of, the successors, assigns, personal representatives, estates, heirs and legatees of the respective Parties.

IN WITNESS WHEREOF, the Parties have executed this Agreement as of the date first above written.

SOUTHERN IOWA GAMING CO.

By: _____
Its: _____
Date: _____7-15-97_____

CLARKE COUNTY DEVELOPMENT CORPORATION

By: _____
Its: _____President_____
Date: ___7-15-97_____

8

Exhibit #8

## AMENDMENT TO MANAGEMENT AND OPERATION AGREEMENT

THIS Amendment to Management and Operation Agreement entered into this 15th day of July, 1997 by and between SOUTHERN IOWA GAMING CO. (hereinafter called "Southern Iowa") and CLARKE COUNTY DEVELOPMENT CORPORATION, and Iowa Non-Profit Corporation (hereinafter called "Development") as follows:

WHEREAS, the parties have entered into a Management and Operation Agreement, and

WHEREAS, said Agreement requires Southern Iowa to pay $ .50¢ per patron gaining entry to the proposed vessel, and

WHEREAS, the parties believe it is more beneficial to assess a percentage of Adjusted Gross Revenue,

NOW THEREFORE BE IT AGREED:

1.  Paragraph 5. B. of the Management and Operation Agreement is hereby deleted and the following inserted in lieu thereof:

    "B. Admission Fee." On a monthly basis and not later than the 15th day of each month, Southern Iowa shall pay Development a sum equal to 1.5% of the previous month's Adjusted Gross Gaming Revenue.

2.  Other than as amended by paragraph one hereof, all remaining terms and conditions of the Management and Operation Agreement shall remain the same.

SOUTHERN IOWA GAMING CO.

By: _____
Its: _____
Date: _____7-15-97_____

CLARKE COUNTY DEVELOPMENT CORPORATION

By: _____
Its: ____President____
Date: ___7-15-97___

D. In the event HGI/Affinity chooses to sell or otherwise dispose of HGI-Lakeside, LLC or substantially all of HGI-Lakeside's assets between July 1, 2013 through June 30, 2018, then the following shall occur:

    i. The capital improvement set-off of .5% as set forth in the September 2004 Agreement between CCDC, HGI, the City of Osceola and the Osceola Water Works Board of Trustees shall be eliminated;

    ii. The new entity/owner shall agree to pay CCDC 3.0% of its Adjusted Gross Revenue, or the state minimum, whichever is greater.

E. Beginning January 1, 2014, and for each year thereafter, the capital improvement set-off of .5% as set forth in the September 2004 Agreement between CCDC, HGI, the City of Osceola and the Osceola Water Works Board of Trustees shall be reduced by .05%, such that the set-off shall be reduced to zero and eliminated on January 1, 2023.

F. The parties expressly acknowledge this Memorandum does not constitute an amendment to the parties' management agreement, but rather a separate agreement for purposes of resolving the lawsuits described herein.

G. The pending State Court action shall be dismissed with prejudice both as to the Iowa Racing and Gaming Commission and HGI/Affinity.

H. The pending federal court suit shall be dismissed without prejudice.

I. The parties will formalize these terms into a comprehensive settlement agreement for execution and approval by the Iowa Racing & Gaming Commission, the City of Osceola, the Osceola Water Works Board of Trustees and the parties' respective Boards.

Amy Lampe, President
Clarke County Development Corporation

6-3-13
Date

Marc Rubinstein by
Jerry Crawford
Marc Rubinstein, General Counsel
Affinity Gaming, LLC/HGI-Lakeside, LLC

6-3-13
Date

Mike Mahaffey, Mediator

6/3/13
Date